IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TARA D. SALLEE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.  ) | CASE NO. 2:12-CV-1086-WKW |
| ) | [WO] |
| FORD MOTOR COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiffs' Motion to Remand. (Doc. # 16.) The parties fully briefed the motion (Docs. # 16, 22, 28), and the matter is ready for adjudication. Based upon the arguments of counsel and the relevant law, Plaintiffs' motion to remand is due to be granted.

**I. BACKGROUND**

This case arises from an accident involving a 1995 Ford Explorer, bearing a Bridgestone tire manufactured the same year. The accident killed LaTonya Sallee and Derrick Sagers. The personal representatives of their respective estates bring this suit on behalf of the estates and Sallee's and Sagers's respective minor children and allege only state law causes of action. Plaintiffs are citizens of Alabama. In their suit, Plaintiffs name Bridgestone Americas, Inc., and Bridgestone Americas Tire Operations, LLC (collectively, "Bridgestone"), as well as Ford Motor Company

("Ford"), none of which are citizens of Alabama. They also name two non-diverse entities: Woodmere Motors, Inc. ("Woodmere"), which sold the car to Sagers, and M&D Automotive, Incorporated ("M&D Automotive"), a car repair shop whose employees mounted the subject tire onto the vehicle in the days before the accident.

In December 2008, after Woodmere sold the car to Sagers[1] but before the accident, Woodmere filed articles of dissolution with the Alabama Secretary of State. (Doc. # 1-6 at 12.) Just days before the July 2011 accident, M&D Automotive entered the picture. It inspected the vehicle and the sixteen-year-old tire, previously serving as a spare, and installed the tire without warning Sagers of its allegedly defective condition.

Days later, Sagers and Sallee headed north from the Montgomery area on Interstate 85. Shortly after they crossed from Alabama into Georgia, Plaintiffs allege the tire detreaded. Sagers, who was driving, lost control of the vehicle, and the ensuing accident killed both Sagers and Sallee.

Plaintiffs brought suit in the Circuit Court of Montgomery County, Alabama.

---

[1] Woodmere sold Sagers the vehicle in approximately 2007. This approximation is derived by triangulating from other allegations in the complaint, as Plaintiffs do not specifically state when Sagers purchased the vehicle. Plaintiffs allege that the subject tire was sixteen years old when M&D Automotive mounted it on the vehicle in 2011. (Compl. ¶ 13.) Plaintiffs also allege that when Sagers bought the vehicle from Woodmere, the subject tire was twelve years old. (Compl. ¶ 13.) Thus, Woodmere sold the vehicle to Sagers four years earlier, in 2007. This conclusion is further supported by the age of the vehicle, as a vehicle manufactured in 1995 would have been twelve and sixteen years old in 2007 and 2011, respectively.

Bridgestone – with Ford's consent – removed to this court on the basis that Woodmere and M&D Automotive were fraudulently joined to avoid remand, and that, in their absence, the court would have diversity jurisdiction. *See* 28 U.S.C. § 1441 (allowing removal of cases over which the United States would have original jurisdiction, including jurisdiction based on diversity of citizenship and a sufficient amount in controversy). Plaintiffs have moved to remand, arguing there was no fraudulent joinder.

## II.  STANDARD OF REVIEW

Federal courts owe a "strict duty" to exercise the limited jurisdiction Congress confers on them. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 357, 377 (1994) (remarking that federal courts "possess only that power authorized by Constitution and statute"). The law favors remand where federal jurisdiction is not absolutely clear, and courts must construe removal statutes narrowly. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329 (11th Cir. 2006).

An action is properly removable if the joinder of a non-diverse party is fraudulent. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). The presence of a fraudulently joined, non-diverse defendant does not defeat diversity jurisdiction because – once the court determines joinder was fraudulent – it "must

dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007).

There are three situations in which joinder may be deemed fraudulent: (1) when there is no reasonable possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) when there is no real connection to the claim and the resident (non-diverse) defendant. *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005); *Triggs*, 154 F.3d at 1287.

The parties agree that the first type – the "no possibility" category – is the appropriate inquiry here. Under that standard, "[i]f there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Triggs*, 154 F.3d at 1287 (quotations omitted). The touchstone for analysis is whether there is a potential cause of action. *Legg*, 428 F.3d at 1325 n.5 (holding that the potential must be more than merely theoretical).

The removing party bears the burden of proving fraudulent joinder, and the burden is "a heavy one." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The determination is based on the plaintiff's pleadings at the time of removal, plus any affidavits or deposition transcripts submitted by the parties, resolving all questions of

4

fact in favor of the plaintiff. *Id.* In this way, the inquiry resembles that on a motion for summary judgment; however, it is different in that the court may not "weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Id.*

### III.  DISCUSSION

Bridgestone, joined by Ford, argues that there is no potential cause of action against either Woodmere or M&D Automotive because Woodmere dissolved and M&D Automotive never existed or did not exist at the relevant time. Their argument fails, at least as to Woodmere.

Though Woodmere indisputably dissolved in 2008, its dissolution does not prevent claims against it. Under Alabama law,[2] claims against dissolved entities are allowed, under limited circumstances, to the extent of its undistributed assets. Ala. Code § 10A-1-9.22; Ally Windsor Howell, *Tilley's Alabama Equity*, § 33:4 (5th ed. 2012) ("[T]he dissolution of a corporation does not prevent commencement of a proceeding by or against the corporation . . . ."); Richard A. Thigpen, *Alabama Corporation Law*, § 17:18 (3d ed. 2007 & Supp. 2011) (stating circumstances under which claims are not barred and are "enforceable against undistributed assets of a

---

[2] The parties' briefing assumes that Alabama law applies on this point, though Plaintiffs argue Georgia law applies to their substantive, state law claims. Because the parties make this assumption, so will the court.

dissolved corporation or against a shareholder of a dissolved corporation"). A dissolved entity may publish a conforming notice in a newspaper of general circulation, thereby barring certain claims against it not commenced within two years. Ala. Code § 10A-1-9.22(c). Claims "contingent or based on an event occurring after the effective date of dissolution" are among the claims barred by a conforming notice. *Id.* at § 10A-1-9.22(b)(3). Additionally, a dissolved entity may notify known claimants in writing of its dissolution after the dissolution's effective date, thereby barring claims not brought within at least 120 days from the written notice. *Id.* at § 10A-1-9.21(b). The claim of a known claimant who did not receive such notice is not barred, unless there is a conforming notice by publication. *Id.* at § 10A-1-9.22(c)(1).

Whether Plaintiffs are known or unknown claimants,[3] their claims are not barred by law. Defendants have not satisfied their heavy burden by showing that Woodmere published a conforming notice of dissolution that would bar unknown claims against it not brought within two years of the notice under § 10A-1-9.22. Nor have Defendants shown that Woodmere gave Plaintiffs written notice of its dissolution, barring known claims against it not brought within a specified time under § 10A-1-9.21. Construing the absence of such evidence in favor of Plaintiffs, no

---

[3] Plaintiffs are almost certainly unknown claimants, as their claims against Woodmere did not arise until after its 2008 dissolution.

notice was ever published or given, and a claim therefore "may be enforced" against Woodmere. *Id.* at § 10A-1-9.22(d)(1).

While Plaintiffs may have little luck recovering against Woodmere, that is immaterial to fraudulent joinder analysis. "[A] plaintiff's motivation for joining a defendant is not important as long as the plaintiff has the intent to pursue a judgment against the defendant." *Triggs*, 154 F.3d at 1291. As long as their complaint states a cause of action and they intend to obtain a judgment against the named defendants, plaintiffs "have a right to select the forum, to elect whether to sue joint tortfeasors, and to prosecute their own suit in their own way to a final determination." *Samples v. Conoco, Inc.*, 165 F. Supp. 2d 1303, 1320 (N.D. Fla. 2001) (finding homeowners' claims against resident wood treatment company that had been defunct for eight years, had not operated for sixteen years, lacked living corporate officers, and had over $291,000 in unsatisfied judgments entered against it did not make joinder fraudulent, even if homeowners could not collect judgment). Plaintiffs are the masters of their complaints and may pursue a judgment, even where a judgment is unlikely to result in recovery.

Because the court finds that a claim against Woodmere is not barred, it does not reach the question of whether a claim against M&D Automotive would also be barred. Woodmere's presence in the suit means there is at least one non-diverse Defendant

against whom there is a potential cause of action, assuming service can be perfected on the dissolved entity. Woodmere's presence in the suit destroys the complete diversity necessary to make removal jurisdiction proper under 28 U.S.C. § 1441 and § 1332. Remand is required.

Nonetheless, it seems possible – perhaps probable – that this case will return to this court. The 120-day period for service of process on Defendants Woodmere and M&D Automotive passed on April 13, 2013.[4] *See* Fed. R. Civ. P. 4(m) (establishing a 120-day deadline for service of process). To date, it appears Plaintiffs have served neither Woodmere nor M&D Automotive, and service of process will be an obstacle to claims against those Defendants, whether in this court or in state court. *See* Ala. R. Civ. P. 4(b). But the fact that Plaintiffs' claims against Woodmere and M&D Automotive are likely to be dismissed imminently if service is not perfected – making another removal likely[5] – cannot figure into the court's remand analysis. "[T]he determination of whether a resident defendant has been fraudulently joined must be

---

[4] For the purposes of Federal Rule of Civil Procedure 4(m), the 120-day period for service of process on Defendants Woodmere and M&D Automotive – not yet served when the case was removed – began to run upon removal, not from the filing of the complaint in state court. *Ritts v. Dealers Alliance Credit Corp.*, 989 F. Supp. 1475, 1478 (N.D. Ga. 1997). "[T]here is no reason that federal procedural rules should apply retroactively back to the day of filing," as "such an interpretation could result in substantial prejudice to plaintiffs." *Id.*

[5] The presumptive time limit for removing a case based on diversity jurisdiction is one year. 28 U.S.C. § 1446(c)(1). That deadline may be extended if the "court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.*

based upon the plaintiff's pleadings at the time of removal," supplemented by information, like affidavits, offered by the parties. *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

In light of this, the court would be remiss if it did not acknowledge the mystery surrounding the failure to serve M&D Automotive. Mary Coleman is Derrick Sagers's mother and the personal representative of his estate, and thus situated as a Plaintiff. (Comp. ¶ 2.) But she is also intimately associated with M&D Automotive: Coleman[6] was one of its incorporators, and she remains its registered agent for service of process. (Doc. # 1-6 at 5–7.) When Plaintiffs attempted to perfect service of process on M&D Automotive, at the address where they insist M &D Automotive continues to operate, they attempted to serve David Coleman rather than Mary Coleman, its registered agent. (Doc. # 1-2 at 163.) At the least, these circumstances raise the specter of a serious conflict of interest.

## IV.  CONCLUSION

Accordingly, it is ORDERED that Plaintiffs' Motion to Remand (Doc. # 16) is GRANTED, and that the action is REMANDED to the Circuit Court of Montgomery County, Alabama. The Clerk of the Court is DIRECTED to take appropriate steps to effect the remand.

---

[6] She was then known as Mary Sanders. (Doc. # 1-9 at 2.)

DONE this 27th day of June, 2013.

                                         /s/ W. Keith Watkins
                            CHIEF UNITED STATES DISTRICT JUDGE